IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy No. 18-24109-JAD |
| BRADLEY S. SWIGER,<br>    Debtor. | Chapter 13 |
| VICKY L. MANSFIELD,<br>    Plaintiff, | Adversary No. 19-02015-JAD |
| -vs- | |
| BRADLEY S. SWIGER and<br>RONDA J. WINNECOUR,<br>CHAPTER 13 TRUSTEE,<br>    Defendants. | |
| IN RE: | Bankruptcy No. 18-24109-JAD |
| BRADLEY S. SWIGER,<br>    Debtor. | Chapter 13 |
| BRADLEY S. SWIGER,<br>    Plaintiff, | Adversary No. 19-02009-JAD<br><br>Related to Doc. No. 33 |
| -vs- | |
| VICKY L. MANSFIELD,<br>    Defendant. | Adversary Nos. 19-2009-JAD and<br>19-2015-JAD are consolidated at<br>Adversary No. 19-2009-JAD |

**MEMORANDUM OPINION**

The above-captioned matter concerns a motion for summary judgment filed by the Debtor, Bradley S. Swiger (the "Debtor") seeking a determination of dischargeability for a debt owed to his ex-wife, Vicky L. Mansfield ("Ms. Mansfield"). For the reasons set forth below, the Court will enter an order

denying the *Debtor's Motion for Summary Judgment* (the "Motion for Summary Judgment", ECF No. 33).[1]

I.
Factual & Procedural History

The Debtor filed for relief under chapter 13 of the Bankruptcy Code (11 U.S.C. § 101 et seq.) on October 23, 2018. In his schedule of unsecured creditors, the Debtor lists Ms. Mansfield as being owed a debt in the amount of $78,000. See *Schedule E/F: Creditors Who Have Unsecured Claims*, 18-24109-JAD, ECF No. 14, p. 15. The Debtor further identifies the debt to Ms. Mansfield as being incurred on May 16, 2016 for "Marital Settlement Agreement (Parent Plus Student Loan[.])" The parties now dispute whether this debt (the "Mansfield Debt") is dischargeable.

By way of background, the Debtor and Ms. Mansfield (together, the "Parties") are former spouses who married on March 7, 1993, and divorced in 2016. See Motion for Summary Judgment, p. 3. The Parties have two children, Cassandra and Amanda. During the course of the Parties' marriage and prior to the commencement of divorce proceedings on May 11, 2015, certain loans were taken out to finance Amanda's college education (the "Student Loans"). The circumstances surrounding the application for the Student Loans are contested and form the basis of the nondischargeability dispute sub judice.

In short, Ms. Mansfield alleges that the Debtor fraudulently signed her name to the Student Loan applications because any permission given to the

---

[1] This Court has subject matter jurisdiction to enter a final judgment pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter pursuant to 11 U.S.C. § 157(b)(2)(A) & (I).

2

Debtor to sign Ms. Mansfield's name was conditioned on the Debtor's alleged representation that the Student Loans would be applied for jointly in both Parties' names. See *Defendant's Answer to Plaintiff's Complaint to Determine Dischargeability* (the "Mansfield Answer"), 19-02009-JAD, ECF No. 4, ¶¶ 7-12. The Debtor, for his part, alleges that he never applied for any Student Loans in Ms. Mansfield's name. See Motion for Summary Judgment, p. 10. Nonetheless, what is not contested is that the Student Loans were ultimately borrowed under the name of Ms. Mansfield alone.

Also disputed is whether and at what point Ms. Mansfield became aware that she was the sole obligor on the Student Loans, as opposed to a co-obligor with the Debtor. Ms. Mansfield alleges she only became aware of her sole obligor status during the course of her divorce proceedings from the Debtor, while the Debtor alleges that Ms. Mansfield knew of her status at all times. See Mansfield Answer at ¶ 17; Motion for Summary Judgment, pp. 10-11.

On May 16, 2016, the Parties executed a *Consent Order of Court* in their state court divorce proceedings (the "Consent Order"). See *Complaint to Determine Dischargeability of Marital Property Settlement Agreement Pursuant to [§]523(a)(15) and [§]1328(a)* (the "Debtor's Complaint"), 19-02009-JAD, ECF No. 1, Ex. A. Pursuant to the Consent Order, the Parties agreed in-part, as follows:

> 7. The parties agree to be responsible for [s]tudent [l]oans for their children as follows; a) Husband shall be solely responsible for the child[']s Amanda's [l]oan which are currently in Wife[']s name. He will assume the entire balance, hold Wife harmless of this obligation and make monthly payments directly to Fed Loans. Wife shall ensure that Husband has all account numbers, bills,

3

> addresses, payment coupons etc. so he can make his payments directly.
>
> . . .
>
> 11. This is a full and final settlement of all claims and there are no other outstanding claims between these parties.

See Consent Order at ¶¶ 7 & 11.

The Debtor subsequently fell behind on payment of the Student Loans and Ms. Mansfield commenced contempt proceedings against the Debtor for failure to abide by the Consent Order. A contempt hearing was held on September 11, 2018 before Master Melanie Shannon Rothey, Esq. Master Rothey issued a *Master's Report and Recommendation* on October 3, 2018. See *Defendant's Appendix to Defendant's Answer to the Plaintiff's Concise Statement of Material Facts Pursuant to L.B.R. 7056-1(b)(C)(3)* ("Defendant's Appendix"), 19-02009-JAD ECF No. 44-1, pp. 101-109. Master Rothey recommended that the state court enter an order finding the Debtor in contempt. *Master's Report and Recommendation,* ECF No. 44-1 at pp. 108-109. Before the state court could enter a final order, the Debtor filed for bankruptcy relief.

On January 21, 2019, the Debtor filed his Debtor's Complaint at adversary proceeding 19-02009-JAD seeking a determination that the Mansfield Debt is dischargeable as a debt arising under a marital property settlement agreement pursuant to 11 U.S.C. § 523(a)(15) and § 1328(a). In response, Ms. Mansfield commenced her own adversary proceeding (19-02015-JAD) by which she seeks a determination that the Mansfield Debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). The adversary proceedings have since been consolidated at adversary proceeding 19-02009-JAD.

The Debtor now requests that summary judgment be entered in his favor in the consolidated proceedings by way of his *Debtor's Motion for Summary Judgment*.

## II.
## Summary Judgment Standard

Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

> "Summary judgment is appropriate only where … there is no genuine issue as to any material fact … and the moving party is entitled to judgment as a matter of law." Melrose, Inc. v. Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010) (quoting Ruehl v. Viacom, Inc., 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. Anderson, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.' " Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).
>
> The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets this burden,

5

the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." Coolspring Stone Supply v. Am. States Life Ins. Co., 10 F.3d 144, 148 (3d Cir. 1993); see also Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

Hadeed v. Advanced Vascular Res. of Johnstown, LLC, No. 3:15-CV-22, 2017 WL 4998663, at *4 (W.D. Pa. Oct. 30, 2017).

III.
Analysis

In his Motion for Summary Judgment, the Debtor posits four questions for resolution:

1. Whether an equitable distribution award that arises from a divorce action is nondischargeable, as determined by 11 U.S.C. §523(a)(15)?

2. Whether an equitable distribution award that arises from a divorce action is dischargeable under 11 U.S.C. §1328(a)?

3. Whether an equitable distribution award in a divorce action could be considered to be in the nature of alimony, maintenance or support, and therefore, non-dischargeable pursuant to 11 U.S.C. §523(a)(5)?

4. Whether the equitable distribution award runs afoul of §523(a)(2) and is considered to be excepted from discharge if the debt was obtained by false pretenses, a false representation, or actual fraud?

See Motion for Summary Judgment, p. 5.

6

First, the Court notes that the manner in which the first three questions are phrased—in that they seek a determination of whether "an" equitable distribution order as opposed to "the" equitable distribution order (a/k/a the Consent Order) would be dischargeable—speaks in generalities and not to the specifics of this case. Indeed, the Debtor's analysis in his Motion for Summary Judgment for the first two questions does not discuss any of the particulars of this matter. If the Debtor truly intended the issues to be phrased in this expansive nature, answering them fully would require this Court to produce a treatise on hypothetical situations not immediately before the Court. The Court declines to issue such an advisory opinion.

To the extent the Debtor intended a more narrow inquiry, it appears that a detailed analysis of whether the Mansfield Debt created by the Consent Order is dischargeable under 11 U.S.C. § 523(a)(15) and § 1328(a), and/or whether it is nondischargeable under § 523(a)(5), is unnecessary in this case. This is because Ms. Mansfield has conceded (or appears to concede) in her pleadings that if the debt is not found to be nondischargeable on account of § 523(a)(2)(A) it is otherwise dischargeable.

For example, in her answer to the Debtor's Complaint, Ms. Mansfield responded "Admitted" to the Debtor's averment that: "The above-mentioned debt is not in the nature of alimony, maintenance or support and therefore does not run afoul of [§]523(a)(5)." See Debtor's Complaint at ¶ 5; *Defendant's Answer to Plaintiff's Complaint to Determine Dischargeability* (the "Mansfield Answer"), 19-02009-JAD, ECF No. 4, ¶ 5. Ms. Mansfield also wrote in her

7

Answer that "Debtor seeks to discharge this settlement debt as a mere marital obligation pursuant to 11 U.S.C. §1328, by means of the super discharge of marital obligations that are otherwise non-dischargeable pursuant to 11 U.S.C. §523(a)(15)." Mansfield Answer at ¶ 32.

That, except for applicability of § 523(a)(2), Ms. Mansfield does not contest the dischargeability of the Mansfield Debt is further supported by the fact that Ms. Mansfield did not address the first three issues posed by the Debtor in her *Defendant Vicky Mansfield's Brief in Opposition to Plaintiff Bradley S. Swiger's Motion for Summary Judgment* (the "Mansfield Brief"). See 19-02009-JAD, ECF No. 45. Instead, Ms. Mansfield opted to solely address the fourth issue concerning nondischargeability pursuant to § 523(a)(2). Thus, the entirety of Ms. Mansfield's opposition to summary judgment concerns the Debtor's allegedly fraudulent execution of the Student Loan documents in Ms. Mansfield's name alone. See e.g. Mansfield Brief at p. 5 ("Summary Judgment is not appropriate in this case, because of the dispute over whether Bradley signed Vicky's name to the student loans.")

However, this Court is mindful that the points set forth in the preceding paragraph could be attributed to the way in which the Debtor phrased the issues in his Motion for Summary Judgment. In that, the first three issues were not phrased as specific to this case. Accordingly, Ms. Mansfield will have further opportunity in these proceedings to address these admissions if she elects to do so. Likewise, the Debtor will be afforded an opportunity to be heard as well.

Moreover, even if properly raised before this Court, a final determination as to dischargeability pursuant to § 523(a)(15) and § 1328(a) would be premature at this stage of the Debtor's bankruptcy case. As set forth in this Court's opinion in In re Walker:

> 11 U.S.C. § 1328(a) allows a debtor in a Chapter 13 case to be discharged from subsection 523(a)(15) debts that would otherwise be nondischargeable if the debtor's case were filed under Chapter 7 or 11. As such, once the Debtor completes all payments under a confirmed Chapter 13 plan [a debt otherwise nondischargeable under § 523(a)(15)] may be discharged pursuant to the "superdischarge" provision of 11 U.S.C. § 1328(a).

Corso v. Walker (In re Walker), 439 B.R. 854, 861-862 (Bankr. W.D. Pa. 2010), aff'd sub nom. Corso v. Walker, 449 B.R. 838 (W.D. Pa. 2011).

As it stands, the Debtor is less than two years into his five-year Chapter 13 Plan. See *Chapter 13 Plan Dated: November 6, 2018*, 18-24109-JAD, ECF No. 15. Accordingly, whether the Debtor will ultimately be entitled to a discharge of the Mansfield Debt under § 523(a)(15) will depend on the Debtor's successful completion of his Chapter 13 Plan and this basis for discharge is not yet ripe.

Turning to the fourth issue, dischargeability under 11 U.S.C. § 523(a)(2), this statutory provision excepts from a discharge granted pursuant to 11 U.S.C. § 1328(b), any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-- (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"

9

The Debtor challenges Ms. Mansfield's standing to pursue the 11 U.S.C. § 523(a)(2) claim against him. The Debtor asserts that "The provision excepting a debt from discharge because it was obtained by 'false pretenses, a false representation, or actual fraud' is only available to individuals who actually transferred the 'money, property or services.' . . . In other words, in this instance Mr. Swiger had to be the transferor, and he was not.'" See Motion for Summary Judgment at pp. 8-9. In setting forth his position, the Debtor cites to Hackenberg v. Druckenmiller (In re Druckenmiller), Adv. No. 1:09-ap-00313, 2010 WL 1257353 (Bankr. M.D.Pa. Mar. 26, 2010) and Corso v. Walker, 449 B.R. 838 (W.D.Pa. 2011), which affirmed this Court's holding in Corso v. Walker (In re Walker), 439 B.R. 854 (Bankr. W.D. Pa. 2010). However, those cases do not support the Debtor's position of non-standing.

The facts and issues of In re Walker, which itself cites In re Druckenmiller, are nearly analogous to the matter at hand. In Walker the debtor-wife applied for student loans in the name of her non-debtor husband for the benefit of their child. In later divorce proceedings, the debtor-wife agreed pursuant to a marital settlement agreement to pay the student loans and indemnify the husband. The debtor-wife failed to make the payments and thereafter, filed for chapter 13 bankruptcy protection. The husband sought a determination of nondischargeability relevant to the student loan debt under several theories, including 11 U.S.C. § 523(a)(2). This Court found issue with the husband's standing to bring a § 523(a)(2) claim with respect to his allegations that the debtor-wife failed to disclose the extent of the loans during

negotiation of the settlement, observing that, the plaintiff was not a "transferor" under the circumstances. See In re Walker, 439 B.R. at 859-860.

Nonetheless, with respect to the husband's § 523(a)(2) claim based on his allegations that his ex-wife acted fraudulently in signing his name to the loan documents without permission, this Court found that in light of the Supreme Court's decision in Archer v. Warner, 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003), the husband was "able to look beyond the [s]ettlement [a]greement to allege he was defrauded during the original transaction that gave rise to the [l]oan [d]ebt." In re Walker, 439 B.R. at 860.

In Archer, the purchasers of a business brought suit in state court against the sellers alleging fraud. The parties to that litigation settled their claims with the sellers agreeing to pay the purchasers a certain sum. The settlement also called for the execution of releases of all claims related to the litigation, except with respect to the amount payable thereunder. In addition to releasing "any and every right, claim, or demand" that the purchasers "now have or might otherwise hereafter have against" the sellers with the exception of the settlement amount, the releases also provided that the settlement was a compromise of the disputed claims, that the sellers admitted no guilt and that the payment was not to be construed as an admission of liability. See Archer, at 317. Thereafter, the sellers defaulted on their settlement payments and filed for chapter 7 bankruptcy relief. The purchasers commenced a nondischargeability action against the sellers, but were unsuccessful as the majority opinion of the Fourth Circuit Court of Appeals found that the

11

settlement acted as a novation of the original debt and thus, any debt on the basis of fraud was replaced by a contractual debt. See Archer, at 318.

The Supreme Court reversed the decision of the Fourth Circuit, observing that while the settlement agreement may have created a novation, that alone did not bar the purchasers from "showing that the settlement debt arose out of 'false pretenses, a false representation, or actual fraud,' and consequently [was] nondischargeable, 11 U.S.C. § 523(a)(2)(A)." Archer, at 323. In arriving at its decision, the majority relied on an earlier Supreme Court decision, Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

In Brown, the Supreme Court rejected the contention that res judicata would prevent a bankruptcy court from looking at the claim which culminated in a consent judgment to determine dischargeability. "Claim preclusion did not prevent the Bankruptcy Court from looking beyond the record of the state-court proceeding and the documents that terminated that proceeding (the stipulation and consent judgment) in order to decide whether the debt at issue (namely, the debt embodied in the consent decree and stipulation) was a debt for money obtained by fraud." Archer, at 320 (citing Brown, at 138-139).

The Archer Court also found influential the Brown Court's point that by changing the nondischargeability provision from excepting only "judgments" sounding in fraud to all "liabilities[,]" that " 'Congress intended the fullest possible inquiry' to ensure that 'all debts arising out of' fraud are 'excepted from discharge,' no matter what their form." Archer, at 321 (quoting Brown at 138). Moreover, that:

>Congress also intended to allow the relevant determination (whether a debt arises out of fraud) to take place in bankruptcy court, not to force it to occur earlier in state court at a time when nondischargeability concerns "are not directly in issue and neither party has a full incentive to litigate them." *Brown,* 442 U.S., at 134, 99 S.Ct. 2205.
>
>The only difference we can find between *Brown* and the present case consists of the fact that the relevant debt here is embodied in a settlement, not in a stipulation and consent judgment. But we do not see how that difference could prove determinative. The dischargeability provision applies to all debts that "aris[e] out of" fraud. *Id.,* at 138, 99 S.Ct. 2205.

Archer v. Warner, 538 U.S. at 321.

As summarized, it was found that "the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt." Archer, at 320-321 (quoting Brown).

In light of these holdings, this Court in In re Walker stated that:

>Therefore, while the Debtor's representations concerning the Settlement Agreement in which the Plaintiff did not transfer any "money, property, or services" to the Debtor is of no moment, the conduct of the Debtor during the original transaction is relevant to a determination of whether the balance of the Loan Debt was incurred by fraud.

In re Walker, 439 B.R. at 860.[2]

---

[2] Beside the fact that this Court is bound by the holdings of the Supreme Court, this Court also sees the logic behind its decisions in Brown and Archer. In short, if the Court were prohibited from looking beyond a consent judgment or settlement to ascertain the nature of the debt any debtor would be able to effectively side-step the nondischargeability provisions of the Bankruptcy Code by first reducing an otherwise nondischargeable debt to a contractual settlement debt and then subsequently discharging that settlement debt in bankruptcy. This would subvert the often-stated intent of the Bankruptcy Code to provide the "honest, but unfortunate" debtor with relief in favor of the "deceitful, yet legally cunning" debtor. Moreover, such result would effectively discourage consensual resolution of claims, resulting in increased legal costs to all parties and further burdening the state-court system.

On appeal, the District Court agreed with this Court's findings, stating that this Court "correctly determined that in light of Archer v. Warner, 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003), § 523(a)(2)(A) potentially covered claims of fraud or false representations committed during an initial transaction or a later settlement agreement resolving a prior fraud claim." Corso v. Walker, 449 B.R. at 848.

On his end, the Debtor recognizes the Archer holding, and even appears to acknowledge its effect on his standing argument. In continuation of the Debtor's standing argument quoted above, the Debtor, citing to Archer, wrote: "In other words, in this instance Mr. Swiger had to be the transferor, and he was not. That being the case §523(a)(2) would not apply and the debt would be dischargeable. However, Ms. Mansfield is permitted to look outside the boundaries of any marital property settlement agreement and scrutinize the conduct of Mr. Swiger to determine whether the debt was obtained by fraud." Motion for Summary Judgment at p. 9.

Nonetheless, the Debtor avers that Archer is distinguishable from the matter at hand, arguing that:

> In *Archer*, the settlement agreement made no reference to the issue of fraud, and therefore, the Court permitted further inquiry on that particular issue. However, in this case the issue of fraud was resolved at the time of the settlement and no further inquiry should be allowed. Paragraph 19 of Ms. Mansfield's Adversary Complaint states that the settlement agreement settles all claims in the divorce action and Ms. Mansfield's claims against the Debtor "relating to his misrepresentation with regard to the children's student loans." (See, Mansfield Complaint, Appendix U) Further, the Consent Order dated May 16, 2016 states that this is a "full and final settlement of all claims and that there are no other

14

> outstanding claims between the parties." (See, Consent Order, Appendix Q)
>
> Therefore, it is not necessary to have any further inquiry because all claims have been settled, including any potential claim of fraud.

Motion for Summary Judgment at p. 9.

The Court takes the Debtor's position two-fold. First, that the Consent Order herein is distinguishable because the Archer settlement made no reference to the fraud claims. Second, that the "full and final settlement" language cuts off the Court's ability to look beyond the language of the Consent order.

As to the first argument, the Court fails to see the merit of the Debtor's argument largely because the Consent Order does not actually reference a fraud claim. Although the Debtor acknowledges that the issue of fraud was resolved by the Consent Order, a reading of the face of the Consent Order does not divulge that information. This Court fails to see how the matter at hand is distinguishable from Archer. Moreover, even if the fraud claim was resolved on the face of the Consent Order, the Debtor fails to fully articulate the relevance and legal effect, if any.

As to the second argument, this Court also finds no distinction between this case and Archer as the settlement agreement in Archer was also accompanied by broad releases to "any and all claims," with the exception of the settlement amount. See Archer, at 317. However, to the extent there is a distinction, the Debtor fails to sufficiently articulate his argument.

Accordingly, for purposes of summary judgment the Debtor has failed to show that Archer is inapplicable. As such, inquiry into the Debtor's allegedly fraudulent conduct in applying for the Student Loans forming the basis of the Mansfield Debt is permitted in this matter.

Consequently, resolution of this adversary proceeding will turn on the facts proven and the application of both § 523(a)(2) and the case law interpreting it. See e.g., Husky Int'l Electronics, Inc. v. Ritz, __ U.S. __, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016); Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); McClellan v. Cantrell, 217 F.3d 890 (7th Cir. 2000); Compton v. Moschell (In re Moschell), 607 B.R. 487 (Bankr. W.D. Pa. 2019); and Elliott v. Kiesewetter (In re Kiesewetter), 391 B.R. 740 (Bankr. W.D. Pa. 2008).

The parties have submitted numerous pleadings, exhibits, and affidavits in support of their conflicting positions. Without providing a full accounting or recitation of the filings, this Court is satisfied that genuine issues of material fact exist as to the claim based on actual fraud. This Court's conclusion is particularly acute since the pleadings are not robust enough for the Court to make a finding as to the Debtor's motive or state of mind (which is required in cases predicated on "actual fraud"). See e.g., Rosen v. Bezner, 996 F.2d 1527 (3d Cir. 1993)(reversing grant of summary judgment when case concerned defendant's motive or intent). Accordingly, the Debtor is not entitled to judgment as a matter of law on the § 523(a)(2) claim.

16

Case 19-02009-JAD    Doc 60    Filed 07/24/20    Entered 07/24/20 15:13:06    Desc Main
Document      Page 17 of 18

Before concluding, in the *Debtor's Reply Brief to Brief in Opposition to Debtor's Motion for Summary Judgment* (ECF No. 50), the Debtor argues that Ms. Mansfield's use of an affidavit by the Parties' daughter, Amanda Swiger, should not be permitted because it was procured after the close of discovery. See ECF No. 50 at pp. 5-6. In particular, the Debtor points out that Amanda Swiger's affidavit, dated October 30, 2019, was taken after the averred August 1, 2019 discovery deadline.  This Court notes the irony in the Debtor's position regarding Amanda Swiger's affidavit as in the very same pleading the Debtor attaches for the Court's consideration a communication from the Federal Student Aid Student Loan Support Center dated November 20, 2019.  See Debtor's Reply Brief, ECF No. 50, pp. 8-9, and *Debtor's Reply Brief Appendix*, ECF No. 50-2, pp. 2-3.

Nonetheless, given that almost eight months have elapsed since the filing of the documents in question, and since the parties have had ample opportunity to put them into perspective, neither party is prejudiced by the Court's due consideration of the referenced evidence in connection with rendering its decision today.[3]  Accordingly, the Debtor's objection to the introduction of Amanda Swiger's affidavit is overruled.

---

[3] The hearing on the Motion for Summary Judgment was originally scheduled for October 16, 2019. The hearing was continued several times both by request of the Parties and by this Court's initiative. See Various Orders at ECF Nos. 36, 42, 51, 53, 55, and 57. With the emergence of the COVID-19 pandemic, the hearing was once again continued from May 1, 2020 until August 5, 2020.  Upon reviewing the submissions of the Parties, the Court has concluded that no argument is necessary regarding the Motion for Summary Judgment.  Given the Court's decision herein, the August 5, 2020 hearing shall be a status conference, at which time the Parties will be

IV.
Conclusion

For the foregoing reasons, the Court shall enter an order denying the *Debtor's Motion for Summary Judgment* (ECF No. 33) and scheduling further proceedings consistent with this *Memorandum Opinion.*

Dated: July 24, 2020

_____
Jeffery A. Deller,
United States Bankruptcy Judge

Case Administrator to Serve:

Debtor
Rodney D. Shepherd, Esq.
Mary Bower Sheats, Esq.
Rhonda J. Winnecour, Trustee

FILED
7/24/20 1:34 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

---

expected to address the timing and mechanics of the trial of this matter in light of the global health emergency.